S. THEODORE BITTENBENDER *vs.* COSMOPOLITAN TRUST COMPANY & another.

Suffolk. May 18, 1925. — July 1, 1925.

Present: RUGG, C.J., BRALEY, PIERCE, WAIT, & SANDERSON, JJ.

*Trust Company,* In liquidation, Validity of issue of stock, Subscription to stock procured by fraud. *Estoppel.*

One, who has been induced through fraud of the president of a trust company to pay money to the president and to receive therefor a certificate of stock which was of an issue never properly authorized by the stockholders, whose name thereafter appeared upon the books of the corporation as a stockholder, and who thereafter received dividends and gave proxies for meetings, cannot maintain a suit in equity for cancellation of his stock and to establish a constructive trust as to the money he paid as a purchase price therefor if he does not begin his suit until after the commissioner of banks, by reason of the insolvency of the trust company, has taken possession of its property and business.

The liability of all stockholders in trust companies under the law may be presumed to be a part of the basis on which deposits are made and business transacted both in commercial and in savings departments of trust companies.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on June 5, 1922, to have the defendant commissioner of banks ordered to deliver up and cancel a certificate of shares of stock in the defendant trust company on the ground that the subscription for the shares was procured by fraud, and to fix with a constructive trust, as funds held in fraud of the plaintiff, $6,500, which the plaintiff had paid to the trust company for the purchase of the shares.

The suit was referred to a master. Material findings by the master are described in the opinion. The case was reserved for determination by the full court by *Braley*, J.

*H. Williams, Jr.,* (*F. O. White* with him,) for Bittenbender.

*D. L. Smith & R. W. Nason,* (*H. O. Cushman* with him,) for commissioner of banks.

RUGG, C.J. The plaintiff in this suit in equity alleges that he was induced to purchase shares of the capital stock of the Cosmopolitan Trust Company by reason of the fraudulent representations of the trust company as to its right to issue additional stock and that, although he received certificates purporting to represent shares of capital stock, such shares never were legally issued and he received nothing for the money paid therefor. It is also sought to establish a constructive trust in the plaintiff's favor upon money in the hands of the commissioner of banks. The bill was filed on June 5, 1922. The commissioner of banks took possession of the trust company on September 25, 1920, and has since been liquidating its assets.

The case was referred to a master. His report establishes the allegation that the plaintiff was induced to subscribe for the stock by reason of the fraud and deceit of the president of the trust company. The facts are set forth at length in the record in *Commissioner of Banks* v. *Cosmopolitan Trust Co., ante,* 205, this day decided. It there has been held that this plaintiff is precluded from setting up the defence that he was not a stockholder in the trust company. The issues in that case were different from those here presented. That decision is not conclusive of the present case, but it is strongly persuasive.

The plaintiff received the certificates of stock in his name, regular in form; he paid the prices established therefor by the board of directors; he received and retained the three regular dividends thereafter declared; and he gave proxies for one regular and one special meeting before the commissioner of banks took possession of the trust company. His name appeared upon the records of the trust company as a stockholder. The vote by which the capital stock was increased, as has been pointed out in the case just decided, was not

adopted by vote of a majority of its original stock as required by the statute.

Undoubtedly, if the plaintiff had brought proceedings to that end against the trust company while it was a going concern or before the rights of third persons had supervened, he could have prevailed at least to the extent of setting aside his subscriptions to stock on the ground of fraud and recovering the money he had paid. *American Tube Works* v. *Boston Machine Co.* 139 Mass. 5. *Reed* v. *Boston Machine Co.* 141 Mass. 454. *Venezuela Central Railway* v. *Kisch,* L. R. 2 H. L. 99.

The situation now has changed in a decisive particular. The commissioner of banks in the exercise of the duty and power imposed on him by the statute has taken possession of the trust company. It is apparent that the trust company is insolvent. It has become necessary for the protection of depositors in the trust company to enforce the statutory liability of the stockholders. There is no provision in our statute, as in similar statutes in other jurisdictions, that the list of shareholders in case of an increase of stock shall be a matter of public record. That is not a decisive factor in this connection. Their names must be recorded on the books of the trust company. The liability of all stockholders in trust companies under the law may be presumed to be a part of the basis on which deposits are made and business transacted both in commercial and in savings departments of trust companies. The faith of the public in part rests upon that liability. It was the purpose of the General Court in establishing that liability that it should constitute a genuine security for creditors. It is contrary to the legislative policy for the protection of depositors in trust companies declared by the stockholders' liability statute, that stockholders, who appear to be such on the books of the trust company at the time it goes into the hands of the commissioner of banks for liquidation, may repudiate liability to creditors because they have been defrauded. The rights of numerous creditors have intervened, who presumably have relied in part upon the stability of stockholders' liability. The depositors had a right to rely upon the

financial responsibility of those whose names by their voluntary and conscious action have been placed upon the records of the trust company as shareholders. The misrepresentations of which the plaintiff complains did not make his stock void. It merely gave him the right to rescind his subscription for shares. It was open to the plaintiff to examine the records of the company and ascertain whatever they disclosed as to the stock. He was in a better position to protect himself than the depositors and other creditors of the trust company who could only rely upon the assumption which the law prompted them to indulge, that behind the paid in capital stock there was also the security of the stockholders' liability. The conclusion that the plaintiff is not entitled to relieve himself from the liability of a stockholder on account of fraud of the nature here disclosed after liquidation of the trust company has begun, is founded on sound reason and policy. It is supported by authority. *Oakes* v. *Turquand,* L. R. 2 H. L. 325. *Tennant* v. *City of Glasgow Bank,* 4 App. Cas. 615. *Stone* v. *City & County Bank,* 3 C. P. D. 283. *Martin* v. *South Salem Land Co.* 94 Va. 28.

It follows irresistibly from what has been decided that he cannot establish a debt nor gain any priority as to funds in the hands of the commissioner of banks in possession of the trust company for purposes of liquidation. See *Yesner* v. *Commissioner of Banks,* 252 Mass. 358. *Central Automobile Tire Co.* v. *Commissioner of Banks,* 252 Mass. 363. *Salem Elevator Works, Inc.* v. *Commissioner of Banks,* 252 Mass. 366.

*Bill dismissed.*