In re Eileen M. LaPOINTE, Debtor.

National Loan Investors, LP,
Plaintiff/Appellant,

v.

Eileen M. LaPointe and Robert F.
LaPointe, Defendants/Appellees.

Nos. MW 99–075, MW 99–076.

United States Bankruptcy Appellate Panel
of the First Circuit.

Oct. 3, 2000.

Michael B. Feinman, Mark D. Johnson, Andover, MA, on brief for the appellant.

George R. Desmond, Framingham, MA, on brief for the appellee Eileen M. La-Pointe.

Before VOTOLATO, DE JESÚS, VAUGHN, U.S. Bankruptcy Judges.

VAUGHN, Bankruptcy Judge.

### Procedural Background

National Loan Investors, LP ("NLI") appeals from an order by the bankruptcy court entering judgment in favor of the Debtor–Appellee, Eileen M. LaPointe ("LaPointe" or "Debtor"). Before the bankruptcy court were two related matters, an objection to claim and a separate adversary proceeding, both pertaining to NLI's attempt to collect a deficiency following the prepetition foreclosure sale of real estate located in Ashland, Massachusetts. After consolidating the two matters for trial, the bankruptcy judge dismissed the adversary proceeding and disallowed NLI's claim, finding that NLI failed to use reasonable diligence in conducting the foreclosure sale.

### Appellate Jurisdiction

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 158(a) and (c), and Rule 8001–1(d)(1) of the Local Rules for the Bankruptcy Appellate Panel for the First Circuit. 28 U.S.C. §§ 158(a) and (c) (1988 & Supp.1998); 1st Cir. BAP R. 8001–1(d)(1) (1997). The parties, pursuant to Rule 8001–1, have not elected to have their appeal heard by the District Court for the District of Massachusetts. 1st Cir. BAP R. 8001–1(d)(1). Further, this proceeding constitutes a separate proceeding within

the context of the Debtor's bankruptcy case, and thus is appropriate for review. *Smith v. Seaside Lanes (In re Moody)*, 825 F.2d 81, 85 (5th Cir.1987).

### Facts

The Debtor was a guarantor on a note in the original amount of $125,000 which was purchased by NLI when the note was in default. After NLI scheduled a foreclosure sale of the real estate securing the note, NLI and the obligors entered negotiations which resulted in procurement of a potential purchaser for the property. NLI and the obligors then agreed to terms fully satisfying the note. However, when sale of the real estate failed to occur as planned, NLI went forward with the foreclosure sale, at which point it purchased the property. NLI did not conduct any display advertising of the foreclosure sale and did not contact the prospective purchaser about the sale of the property. NLI then filed a suit to collect a deficiency in the amount of approximately $88,000 in state court. After the Debtor filed a Chapter 13 bankruptcy petition, the deficiency action was tried in the bankruptcy court along with the Debtor's objection to NLI's claim. At the close of trial, the bankruptcy court disallowed NLI's claim in full and dismissed its deficiency claim, finding that NLI failed to use reasonable diligence in conducting the foreclosure sale.

### Discussion

On appeal, NLI argues several errors by the bankruptcy court, including: (1) the Debtor, as a guarantor, did not have standing to bring an action challenging the foreclosure sale; (2) the Debtor waived all defenses to the method of sale in the guaranty; (3) there was insufficient evidence from which the judge could find the sale improper; (4) the bankruptcy court should not have disallowed the claim in whole, but should have only reduced the deficiency by the damage to the obligors; and (5) the bankruptcy court acted improperly by engaging in improper questioning of witnesses, in allowing expert testimony, and

by making insufficient findings of fact and law.

■ The Bankruptcy Appellate Panel reviews the factual findings of the court below for clear error and reviews its legal conclusions de novo. *See Brandt v. Repco Printers & Lithographics, Inc. (In re Healthco International, Inc.)*, 132 F.3d 104, 107 (1st Cir.1997); *Martin v. Bajgar (In re Bajgar)*, 104 F.3d 495, 497 (1st Cir.1997); *Grella v. Salem Five Cent Savs. Bank*, 42 F.3d 26, 30 (1st Cir.1994).

The Panel addresses the relevant issues on appeal as follows.

### A. Debtor's Standing

■ NLI argues that the Debtor, as guarantor, lacks standing to object to its claim or to challenge the reasonableness of the foreclosure sale. We disagree. Although a guarantor may not be able to bring an action for damages where the injury to the guarantor is derivative rather than direct, *see Mid–State Fertilizer Co. v. Exchange National Bank of Chicago*, 877 F.2d 1333, 1336–37 (7th Cir.1989), a guarantor sitting in a defensive posture generally can assert those defenses available to the obligor. *See In re Werth*, 37 B.R. 979, 986 (Bankr.D.Colo.1984) (citing *U.S. v. Willis*, 593 F.2d 247 (6th Cir.1979); *U.S. v. Terrey*, 554 F.2d 685 (5th Cir.1977); *Mercantile Financial Corp. v. Miller*, 292 F.Supp. 797 (E.D.Pa.1968)). In this case, the Debtor is raising the defense of unreasonableness in an objection to NLI's proof of claim and as a defense in the adversary proceeding seeking a deficiency judgment. Thus, the Debtor is in a defensive position and can raise the defenses available to the primary obligor.

### B. Waiver of Defenses

NLI argues that the language of the guaranty explicitly waived any defense based on the unreasonableness of the foreclosure sale. The bankruptcy court found that the language of the guaranty did not

provide an express waiver of defenses. We agree.

■ The portion of the guaranty excerpted in NLI's brief provides:

Each of us also jointly guarantees to said Guaranty First Trust Company and its successors and assigns, the punctual performance of all the mortgagor's covenants and agreements contained to said mortgage; and all parties now or hereafter liable for the payment of any of the indebtedness hereby evidenced hereby agree, by executing or endorsing this note or by entering into or executing any agreement to pay any indebtedness hereby evidenced, that the owner or holder hereof shall have the right, without notice, to deal in any way at any time with any party or to grant any extensions of time for payment of any of said indebtedness or any other indulgences or forbearances whatsoever without in any way effecting [sic] the liability of any party hereunder; and notwithstanding that the maker may by operation of law or otherwise be relieved of its obligations under said note and/or mortgage.

*See* Appellant's brief at 12. Massachusetts courts have acknowledged that a clear and unequivocal waiver of the guarantor's rights and defenses in the guaranty can preclude the Debtor from raising a defense to the manner of the foreclosure sale. *See Pemstein v. Stimpson,* 36 Mass.App.Ct. 283, 630 N.E.2d 608, 612 (1993), *rev. denied,* 418 Mass. 1103, 636 N.E.2d 279 (1994).

■ Here, the closest the guaranty comes to providing a waiver of defenses is the phrase stating "the owner or holder hereof shall have the right, without notice, to deal in any way at any time with any party . . . ." However, the sentence goes on to refer to the holder's right to extend or alter repayment terms with the primary obligor. We interpret the language to refer to the holder's ability to renegotiate repayment terms with the primary obligor without consent of the guarantor. Thus, we do not find this paragraph to be a waiver of the guarantor's defenses. To the extent the paragraph might be interpreted in another manner, we find the provision ambiguous, and we will not construe it against the guarantor.

## C. The Foreclosure Sale

NLI argues that the court erred in failing to direct a verdict in its favor, contending that there was no evidence that its foreclosure sale was improper. We disagree.

■ In reviewing the court's findings, we must first address NLI's misconception of the applicable standard according to Massachusetts law for a foreclosure sale of real estate. Throughout its brief, NLI mistakenly refers to its duty as one of commercial reasonableness in conducting the foreclosure sale. However, the commercial reasonableness standard applies to sales of personal property by secured parties under Article 9 of the Uniform Commercial Code. *See* Mass.Gen.Laws. ch. 106 § 9–504(3) (sale or disposition of property must be commercially reasonable). By its own terms, Article 9 is not applicable to real estate transactions. *See* Mass.Gen. Laws. ch. 106 § 9–104(j) (Article 9 does not apply to the creation or transfer of an interest in or lien on real estate). Instead, the duty of a mortgagee foreclosing on real estate is governed primarily by adherence to the statutory requirements found in Mass.Gen.Laws ch. 244 §§ 11–17B. *Pemstein,* 630 N.E.2d at 611. This statutory framework includes minimum publication and notice requirements.[1] In addition to compliance with the statute, however,

---

1. Pursuant to Massachusetts law, a foreclosure is not proper unless "notice thereof has been published once in each of the three successive weeks, the first publication to be not less than twenty-one days before the day of sale, in a newspaper, if any, published in the town where the land lies or in a newspaper with general circulation in the town where the land lies and notice thereof has been sent by registered mail to the owner or

the mortgagee must also act in good faith and use reasonable diligence in conducting the sale. *Id.* *See also Edry v. Rhode Island Hospital Trust (In re Edry),* 201 B.R. 604, 606 (Bankr.D.Mass.1996).

The bankruptcy court found that NLI's failure to provide notice of the foreclosure sale to a party with whom it had previously negotiated and knew to be interested in purchasing the property demonstrated a lack of reasonable diligence.[2] *See* Appellee's Appendix at 29. Failure to provide notice to a known potential purchaser has been held to constitute lack of good faith and reasonable diligence. *See Sandler v. Silk,* 292 Mass. 493, 198 N.E. 749 (1935). *See also Edry,* 201 B.R. 604 (failure to provide notice beyond the bare statutory requirements held to show lack of reasonable diligence). The bankruptcy court also found NLI's failure to use display advertisements demonstrated a lack of reasonable diligence. Although not strictly required by statute, display advertising is a standard practice in Massachusetts foreclosure sales and the failure to conduct display advertising has been held to show lack of reasonable diligence. *See Edry,* 201 B.R. at 607–08. Thus, we find that there was ample support for the bankruptcy court's finding that NLI failed to use reasonable diligence in conducting the foreclosure sale.

### D. Proper Relief

NLI argues that even if the bankruptcy court properly ruled that it failed to use reasonable diligence, the court applied an improper remedy. Specifically, NLI argues that the bankruptcy court should not have disallowed its claim in full, but should have applied a "damages setoff" theory, which would place the burden on the Debtor to show the injury resulting from the improper sale. NLI argues that by applying the damages setoff theory, its claim should have been, at most, reduced by the difference between the fair market value of the property at the time of the sale and the amount realized at foreclosure, a difference of $12,000. *See* Appellant's brief at 6.

In support of the damages setoff approach, NLI urges that the Panel follow *First Agricultural Bank v. Replogle,* 929 F.2d 836 (1st Cir.1991). The *Replogle* court was faced with applying the proper remedy where a secured creditor's sale of personal property was found commercially unreasonable under Article 9 of the Uniform Commercial Code. There, the court noted that there are three possibilities where a sale is found commercially unreasonable: absolute preclusion, which disallows the deficiency in toto; rebuttable presumption, with the burden on the secured party to show that the fair value of the collateral is less than the debt; and damages setoff. The First Circuit rejected the bankruptcy court's and the district court's adoption of the rebuttable presumption approach in favor of the damages setoff approach. The court noted that Massachusetts had not definitively ruled on the subject, but that the case of *Shawmut Worcester County Bank, N.A. v. Miller,* 398 Mass. 273, 496 N.E.2d 625 (1986) had made an affirmative indication, as dictum, that damages setoff was the proper approach. *Id.* at 839, 496 N.E.2d 625. In applying damages setoff, the court acknowledged that Massachusetts courts may come to different conclusions when faced directly with the same issue.

If the instant case involved a sale of personal property rather than a foreclosure sale on real estate, the Panel would be bound by the counsel of *Replogle* as, to our knowledge, Massachusetts courts have yet to definitively determine the proper standard. However, this transaction involves real estate, and as stated previous-

owners of record of the equity of redemption as of thirty days prior to the date of sale...." Mass.Gen.Laws Ann. ch. 244 § 14.

**2.** There is nothing in the record before this panel to show whether the bankruptcy court considered NLI's compliance with statutory notice requirements. Therefore, we make no finding here as to whether NLI complied with Mass.Gen.Law. Ann. ch. 244.

ly, Article 9 of the Uniform Commercial Code is inapplicable. Therefore, we must determine the proper relief for an obligor under Massachusetts law where a mortgagee seeking a deficiency judgment failed to use reasonable diligence in selling the subject real estate.

 The failure of a mortgagee to use good faith and reasonable diligence in executing a foreclosure sale will result in the invalidation of the sale. *Krassin v. Moskowitz*, 275 Mass. 80, 175 N.E. 269 (1931). Although an injured party may move to set aside an improperly conducted foreclosure sale, Massachusetts has also recognized an alternate remedy in tort. *See Cambridge Savings Bank v. Cronin,* 289 Mass. 379, 194 N.E. 289, 290 (1935) (an action in tort and a proceeding to set aside are alternative and inconsistent).

In applying a tort remedy on several occasions, the Supreme Judicial Court has recognized a damages theory akin to damages setoff. In coming to this conclusion, our search of relevant case law takes us back more than a century, to *Fenton v. Torrey*, 133 Mass. 138 (1882), in which the Supreme Judicial Court recognized the right of a mortgagor, who was personally liable for a deficiency upon a sale of foreclosed real estate, to maintain an action in tort against the mortgagee for misconduct in conducting the sale. In recognizing that the mortgagor suffered actual losses resulting from the improper sale, the court held that she could recover damages in the amount she sustained as a result of the misconduct. *Id.* at 139. Likewise, in *Boutelle v. Carpenter*, 182 Mass. 417, 65 N.E. 799 (1903), where the obligors on a note showed that the foreclosure sale of real estate was improper, the Supreme Judicial Court upheld the trial court's reduction of the amount due on the underlying note by the difference between the fair market value of the equity in the property and the amount paid for that equity at the foreclosure sale. *Id.* at 800. In *Levey v. Higginson,* 266 Mass. 381, 165 N.E. 492 (1929), where a foreclosing mortgagee seeking a deficiency was found to have exercised bad faith in conducting a foreclosure sale, the court upheld the right of the defendant obligor to offset the deficiency by the damages suffered as a result of the bad faith in conducting the foreclosure sale. *Id.* at 494.

Our review of these cases leads us to the conclusion that the court should have applied the damages setoff theory to this case, allowing the Debtor to offset the amount of the deficiency by the damages she sustained from NLI's failure to properly conduct the foreclosure sale. Accordingly, the case will be remanded for the bankruptcy court to determine the proper recovery under this theory.

E. Remaining Issues

The remaining objections of NLI relate to the bankruptcy court's conduct in examining witnesses, making findings of fact and law, and allowing expert testimony.

 As to the court's questioning of witnesses, the Federal Rules of Evidence specifically give the court the discretion to interrogate any witness, whether called by the court itself or by a party. Fed.R.Evid. 614(b). The transcript reveals that the court, on several occasions, sought clarification of answers from witnesses and presented its own questions in order to assist in its role as fact finder and to help promote the presentation of evidence. We conclude that the bankruptcy court acted well within its discretion, and we find no bias or prejudice in the court's conduct.

 As to the bankruptcy court's findings of fact and conclusions of law, we note that Fed.R.Civ.P. 52(a) as made applicable by Fed.R.Bankr.P. 7052 permits the court to make its findings orally in open court. NLI argues that the court made findings based on evidence that was not before the court. Our review of the transcript reveals that the bankruptcy court's findings were based on the evidence before it and we find no error.

Finally, NLI argues that the Debtor's expert witness did not possess sufficient training, education or experience and that the bankruptcy court abused its discretion

in allowing the testimony. The transcript reveals that both the Debtor's counsel and the bankruptcy court questioned the witness regarding his qualifications to testify about foreclosure proceedings. We find no abuse of discretion in the bankruptcy court's acceptance of his testimony.

### Conclusion

For the above reasons we affirm the bankruptcy court's finding that the Appellant failed to use reasonable diligence in conducting the foreclosure sale. However, in light of our ruling that the bankruptcy court should have applied a "damages set-off" theory when applying the proper remedy, we remand to the bankruptcy court to determine the proper measure of relief in accordance with this opinion. All other decisions of the bankruptcy court are affirmed.

As a final matter, we address the Appellant's motion for a stay pending appeal which was granted by this Panel. This opinion constitutes the Panel's disposition of the matters before it, and accordingly the stay pending appeal is now vacated.