Troy, Paul E., J.
INTRODUCTION
The plaintiffs brought this action to recover damages from the defendants stemming from a foreclosure sale conducted by MEZ, LLC. The plaintiffs claim that the defendants breached a contract, lacked good faith and fair dealing, and executed the foreclosure sale without reasonable diligence. The case is before the court on the defendants’ motion for summary judgment pursuant to Mass.R.Civ.P. 56. For the following reasons the defendants’ motion is DENIED in part and ALLOWED in part.
BACKGROUND
The undisputed and disputed facts in a light most favorable to the non-moving party are as follows.[3]
In 1987, Kevin P. Ryan (“Ryan”) obtained a loan in the sum of $865,000.00 from Framingham Savings Bank. In 1996, Ryan obtained a second loan in the sum of $110,000 from MetroWest Bank, Framingham Savings Bank’s successor. Both loans were secured by a first mortgage on two properties owned by the plaintiffs, one located at 276-284 Broadway, Chelsea, Massachusetts (the “Chelsea property”), and the other located at 73 Beaconwood Road, Newton, Massachusetts (the “Newton property”) (collectively referred to as “the properties”). On or about December 17, 2002, Banknorth, N.A., the ultimate successor to MetroWest Bank, assigned the mortgage together with the prom *170 issory notes evidencing the foregoing debts owed by the plaintiffs to MEZ, LLC.
At the time of the assignment, Ryan was in default of the repayment terms under the promissory notes. Banknorth N.A. had sent written notice to Ryan of its intention to foreclose, and it had commenced foreclosure proceedings by filing a complaint to foreclose the mortgage in the Massachusetts Land Court. After the assignment MEZ, LLC gave written notice to Ryan of its intention to foreclose on both properties, and published legal notice of the foreclosure sale. The legal notices for the properties were published in the Chelsea Record newspaper, and the Newton Tab, on January 22, January 29, and February 5, 2003.[4] The first publication date was 21 days prior to the scheduled foreclosure sale, which was conducted on February 11, 2003. Each notice contained descriptions of both properties which stated that the properties were the “only parcels to be sold at this sale,” which was to occur at the Chelsea property.[5]
An auctioneer conducted the sale of both properties from the Chelsea property. The plaintiffs did not attend the foreclosure sale. Four interested parties attended the foreclosure sale. The only bid for both properties came from MEZ, LLC, in the amount of $365,000.00. MEZ, LLC had the foreclosure deed made out to PZ Realty Trust, which was created by MEZ, LLC specifically to take title to the properties.
DISCUSSION
Having established all material facts, the question becomes whether there remains a genuine dispute of material fact; if not, then the moving party is entitled to judgment as a matter of law.[6] Cassesso v. Comm’r of Corr., 390 Mass. 419, 422 (1983); Cmty. Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating that the summary judgment record entitles it to a judgment as a matter of law because there is an “absence of a triable issue.” Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). “[The] parly moving for summary judgment in a case in which the opposing party will have the burden of proof at trial is entitled to summary judgment if he demonstrates . . . that the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case.” Dulgarian v. Stone, 420 Mass. 843, 846 (1995), quoting Symmons v. O’Keeffe, 419 Mass. 288, 293 (1995). “[B]are assertions and conclusions . . . are not enough to withstand a well-pleaded motion for sum-maryjudgment.” Polaroid Corp. v. Rollins Envtl. Servs., Inc., 416 Mass. 684, 696 (1993). Furthermore, all logically permissible inferences must be made in favor of the nonmoving party. See Willits v. Roman Catholic Archbishop of Boston, 411 Mass. 202, 203 (1991).
As to Counts I and II of the complaint, the defendants have demonstrated that the plaintiffs have no reasonable expectation of proving essential elements of their case. Defendants PZ Realty Trust, Paul J. Zepf, individually and as Trustee of PZ Realty Trust, William R. Haney, Sr., individually and as Trustee of PZ Realty Trust, did not enter into a contractual relationship with the plaintiffs. Accordingly, it is undisputed that these defendants did not breach any agreement with the plaintiffs, see Dulgarian, 420 Mass. at 846, thus, summary judgment is appropriate as to Count I and II against PZ Realty Trust, Paul J. Zepf, individually and as Trustee of PZ Realty Trust, William R. Haney, Sr., individually and as Trustee of PZ Realty Trust.
It is undisputed that the remaining defendant, MEZ, LLC did not breach the mortgage contract with the plaintiffs. Rather, at the time of the assignment from Banknorth, N.A. to MEZ, LLC, the plaintiffs admitted that they had defaulted on the mortgage agreement. Therefore, because “bare assertions and conclusions ... are not enough to withstand a well-pleaded motion for summary judgment,” Polaroid Corp., 416 Mass. at 696, the plaintiffs have failed to raise a genuine issue of material fact in dispute in order to withstand summary judgment as to Counts I and II against MEZ, LLC. See Pederson, Inc., 404 Mass. at 16-17.
As to Count III, the defendants argue that they are entitled to summary judgment as a matter of law because they followed the statutory demands of foreclosure sales. The plaintiffs argue that the defendants conducted the foreclosure sale in bad faith and in a commercially unreasonable manner.[7] The plaintiffs point to the inadequacy of the purchase price, the lack of advertisements in more widespread circulating newspapers, and that both properties were sold as one transaction at one auction rather than separately, to demonstrate a lack of reasonable diligence to get the best foreclosure sale price.
Under Massachusetts law, the mortgagor has the burden of proving commercial unreasonableness. See Chartrand v. Newton Trust Co., 296 Mass. 317, 320 (1936). Mortgagees are held to have satisfied their fiduciary duties to mortgagors if they comply with the statutory foreclosure requirements unless the mortgagor demonstrates fraud, bad faith, or the absence of reasonable diligence. See Sandler v. Silk, 292 Mass. 493, 496 (1935); Pemstein v. Stimpson, 36 Mass.App.Ct. 283, 286 (1994). Mere inadequacy of the purchase price alone is not indicative of bad faith, fraud, or lack of diligence. Chartrand, 296 Mass. at 320; Pemstein, 36 Mass.App.Ct. at 287.
The mortgagee’s duty is more exacting when it becomes the buyer of the property, where “he will be held to the strictest good faith and the utmost diligence for the protection of the rights of his principal.” Union Market Nat’l Bank of Watertown v. Derderian, 318 Mass. 578, 582, 62 (1945), quoting Montague v. Dawes, 14 Allen 369, 373 (1867). Consistent with these requirements, the mortgagee has a duty “to obtain for the property as large a price as possible.” Clark v. Simmons, 150 Mass. 357, 359 (1890). The courts have consistently characterized the relationship of the mortgagee to the mortgagor as that of trustee; *171 thus, the mortgagee owes a duty of reasonable care to get the best price for the benefit of the mortgagor. See Markey v. Langley, 92 U.S. 142, 155 (1875),[8] citing Hext v. Porcher, 1 Strob.Eq. 172 (So.Car.Ct.App. 1846); Bon v. Graves, 446 Mass. 440, 446 (1914); Silk, 292 Mass. at 496; Wüliams v. Resolution GGF OY, 417 Mass. 377, 382-82 (1994). Bare literal compliance with the terms of the power is not enough to overcome a lack of reasonable diligence. Krassin v. Moscowitz, 275 Mass. 80, 82 (1931).
Here, the defendants scheduled a foreclosure sale on the first day available after the statutoiy notice period had passed, or as one court characterized it, “allowed the shortest period permitted by law to elapse between the first advertisement and the sale.” Graves, 216 Mass. at 446. The advertisements were included in two local papers, the Newton Tab, and the Chelsea Record. However, the defendants failed to advertise the properties in either of the two most widely circulated papers in the state, the Boston Globe or the Boston Herald.[9] These circumstances are also similar to the facts in Graves, where the court noted that “the advertisement was printed in a newspaper of limited circulation . . . although five other newspapers circulated there to a much larger extent.” 216 Mass. at 446 (setting aside a foreclosure sale due to lack of reasonable diligence by mortgagee).
In addition, in this case, MEZ, LLC conducted just one foreclosure sale for two properties. A commercial property located in Chelsea, the other a residential property located in Newton. Moreover, the foreclosure sale for both properties was conducted at the commercial property in Chelsea. A reasonable inference is that these circumstances limited the pool of potential buyers for the residential property because any buyer would have been forced to take title along with any corresponding liabilities of the commercial property; while conversely, a buyer interested in the commercial property would also have to take title and the associative liabilities of the residential property. In retail parlance, this was advertised as essentially a “two-for-one sale.”
In total, the execution of the foreclosure sale of both the residential and commercial properties at once, at the site of the commercial property adds to the inference that the sale was conducted as expeditiously as possible so as to secure the property for the mortgagee, “rather than to make a fair sale in accordance with the power under such conditions as are rationally calculated to result in getting for the property as much as it reasonably may be made to bring.”[10] Graves, 216 Mass. at 447 (emphasis added).
As the Court in Graves, explained almost a centuiy ago,
[n]o one of these circumstances standing alone would show bad faith on the part of [the defendant] in making the foreclosure. But collectively they gain a force which they fail to possess separately. Taken together, they [could] show a failure to use that good faith which the law requires in executing a power, even though on the face of the record there was a technical compliance with its terms.

Id.

Therefore, because there is a genuine dispute of material fact- — whether MEZ, LLC executed the foreclosure sale in good faith and with reasonable diligence — summary judgment is inappropriate.
ORDER
It is hereby ORDERED that the defendants’ motion for summary judgment pursuant to the MassR.Civ.P. 56, be ALLOWED as to Counts I and II as to all defendants. The defendants motion is hereby ORDERED to be DENIED as to Count III as against MEZ, LLC, but ALLOWED as to all other defendants.

 The defendants have moved to strike plaintiffs’ response to the defendants’ statement of material facts. The court takes no action on that motion at this time as the court’s allowance or denial of the motion would not affect the court’s decision.

 The Chelsea property notice was put in the Chelsea newspaper, and the Newton property was placed in the Newton newspaper.

 The notices also described a third property that was released from the mortgage and thus, not part of this case.

 Rule 56(c) of the Massachusetts Rules of Civil Procedure provides that summary judgment is appropriate “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.”

 At the outset, since MEZ LLC is the only defendant that conducted the foreclosure sale, summary judgment should enter as to the other defendants as to Count III.

 The U.S. Supreme Court (Swayne, J.) also explained that a mortgagor “must regard the interests of others as well as his own. He should seek to promote the common welfare. If he does this, and keeps within the scope of his authority, a court of equity will in no wise hold him responsible for mere errors of judgment, if they have occurred, or for results, however unfortunate, which he could not reasonably have anticipated.” Markey v. Langley, 92 U.S. 142, 155 (1875), citing Hext v. Porcher, 1 Strob.Eq. 172 (So.Car.Ct.App. 1846).

 The court takes judicial notice that the Boston Globe and the Boston Herald are circulated state-wide and throughout New England, while the Newton Tab and the Chelsea Record are limited in their circulation primarily to Newton and Chelsea. See Bezio v. Patenaude, 381 Mass. 563, 579 (1980); cf. Town of Nantucket v. Beinecke, 379 Mass. 345, 352 (1979) (judicial notice of the existence of a weekly town newspaper).

 The court also notes that although the price received at the auction by itself is not indicative of bad faith or lack of diligence, see Chartrand, 296 Mass. at 320, it should be added to the calculus. In this case, Ryan received a loan in the sum of $865,000 in 1987 — almost fifteen years before the auction date. Ryan received another loan in 1996 for $110,000. The price paid for at auction was $365,000, which is forty-two percent of the 1987 mortgage amount, and thirty-seven percent of the loan amount after the additional 1996 loan.